### WOOLFOLK v. GRANITEVILLE MANUFACTURING CO.

1. Where an issue is ordered out of chancery, the judge presiding at the trial of such issue cannot grant a non-suit, but must try the case and report back the result

2. If error be committed on the trial of such an issue, the decree based on the verdict would be affected by this error, and subject to exception therefor.

3. The rule admitting ancient deeds as evidence upon production and inspection, without further proof of execution, does not apply to copies, however old they may be.

4. A deed cannot properly be recorded without proof of its execution, and if recorded without proper probate, the registry does not operate as notice of its existence.

5. Under the registry laws of force in 1820, a deed executed in South Carolina, and proved before a magistrate in Georgia, was not properly probated, and its record did not operate as notice.

6. Plaintiffs, claiming a moiety of a tract of land which defendant claimed in severalty, offered to show by an alleged copy-deed, that defendant acquired only a moiety of the land under their chain of title. *Held*, that the evidence so offered was not collateral to the matter at issue.

Before HUDSON, J., Aiken, September, 1884.

The opinion fully states the case.

*Messrs. J. E. Bacon, B. L. Abney,* for appellants.

*Messrs. Henderson Bros., Sam'l Lord,* contra.

March 16, 1885.   The opinion of the court was delivered by MR. JUSTICE McGOWAN.   This was an action for partition of a tract of land now in Aiken, formerly Edgefield, County, containing one thousand acres, upon a part of which the Graniteville Factory and appurtenances now stand, and in which the plaintiffs claim that they are entitled to certain interests as tenants in common.   Briefly, they allege that on March 8, 1808, one John C. Allen, the then sheriff of Edgefield, conveyed by deed the tract of land, now sought to be partitioned, to John Woolfolk and Christian F. Breithaupt; and that the said John Woolfolk, having never disposed of. his moiety in the said lands, died on May 12, 1861, leaving a number of children him surviving, and that these, together with the heirs of such as predeceased their father, are now entitled by descent to certain shares in the premises, and they are the plaintiffs.

The answer of the defendant denied in the most positive terms that there was any tenancy in common, and claimed that John Woolfolk, in his lifetime and many years before his death, disposed of all his interest in the said lands, and having no interest

at the time of his death, none could pass to his heirs. But, on
the contrary, that they were seized and possessed in their own
right, in severalty and in fee, of the land sought to be parti-
tioned; that on April 10, 1846, they purchased for valuable
consideration, and without notice of plaintiffs' claim, or any en-
cumbrance whatever, from the South Carolina Railroad Com-
pany, the land known as the "Hamilton tract," containing 450
acres, and parcel of the aforesaid land sold at sheriff's sale, and
believing their title to be perfect, erected thereon the valuable
property known as the Graniteville Factory, and that "they have
held the said tract of land in open, adverse, exclusive, continu-
ous, and undisturbed possession for more than thirty years; and
that the plaintiffs herein are barred from asserting any title or
claim to the same by the operation and effect of the statute lim-
iting the period within which such actions may be brought, and
by lapse of time, and the presumptions thence arising," &c.

The case was placed on Calendar No. 2, and on motion of
plaintiffs' attorney, an issue in the following form was submitted
to the jury: "Have the plaintiffs title to a moiety of the land
sought to be partitioned, or any part thereof?" Upon the trial
of this issue the plaintiffs, after due notice, offered in evidence a
certified copy from the register's office at Edgefield (then the
proper office) of what purported to be a deed from Christian
Breithaupt to Ransom Hamilton, bearing date August 24, 1818,
conveying "an undivided moiety of a tract of land commonly
called Richardson's Old Mills, lying on Big Horse Creek," &c.
Said certified copy represented the probate of the deed to have
been made as follows: "Georgia, Richmond County. Came before
me A. D. Knight, and made oath that he was present and saw
Christian Breithaupt sign, seal, and deliver within deed for the uses
within mentioned, and also saw Ralph Thomas subscribe with him-
self as a witness. (Signed) A. D. Knight. Sworn to before me
this September 23, 1820. (Signed) R. Bush, J. P. South Caro-
lina, Edgefield District. Recorded in Book O O, folio 239, and
examined this October 2, 1820. M. Mims, C. C. P."

The defendant company objected to the introduction of the
deed on the ground that it had never been properly probated,
hence the clerk had no right to receive it, and consequently a

certified copy was not evidence. The presiding judge ruled that the copy was not evidence. The plaintiffs then asked that the paper might be admitted to show that such a deed had been in existence ; and that also being refused, the plaintiffs' counsel asked leave to enter a non-suit, with leave to move to set it aside in the Supreme Court, which being also refused, the trial of the issue proceeded. The jury found "that the plaintiffs have shown no title to a moiety or any part of the land sought to be partitioned, and on the issue referred to us, we find for the defendant;" and thereupon the presiding judge, sitting as chancellor in the case, affirmed the finding of the jury and dismissed the complaint, and the plaintiffs appeal to this court upon the following grounds :

"1. Because his honor erred in refusing to admit in evidence the certified copy of the deed from C. Breithaupt to Ransom Hamilton, upon the ground that the execution of the said deed having been proved in Georgia, the Clerk of Edgefield District was not authorized to record it, and therefore being a deed not duly recorded, there could be no certified copy of it.

"2. Because his honor erred in refusing to allow the said certified copy in evidence to show that a deed from Breithaupt to Ransom Hamilton had been in existence.

"3. Because, after ruling the said certified copy to be inadmissible, his honor refused to grant the plaintiffs a non-suit with leave to move to have the same set aside, stating that he had neither the power nor the discretion to do so."

We do not understand that the plaintiffs asked leave to discontinue their whole case, but that they might have an order of nonsuit as to the issue ordered, leaving the proceeding in equity still standing. We do not see how the judge could have granted a non-suit as to the issue, which was not an independent action, but "an issue from chancery," ordered at the instance of the plaintiffs themselves, to determine (in a manner they had a right to demand) a question which had arisen in the progress of the cause. We suppose the plaintiffs might have brought an original action at law, or possibly may have obtained an order in their case, that an action of law should be brought ; but, probably for some good reason, they chose not to do so. They instituted, on the equity

side of the court, an action for partition, and obtained an order out of chancery for the issue. This being the case, the officer who tried that issue sitting as a law judge, could not grant a non-suit, for that would have been precisely equivalent to revoking the order. He had no right to do that, or refuse to try the issue, or to grant a new trial or non-suit. He had no option but to try the case and report back the result. *McEwen* v. *Mazyck & Bell*, 3 *Rich.*, 214; *Taylor and wife* v. *Mayrant*, 4 *DeSaus.*, 505; *Mayrant* v. *Miller*, 8 *Rich.*, 284; *Thomasson* v. *Kennedy*, 3 *Rich. Eq.*, 440.

But while this is so, if a serious error was committed on the trial of the issue, the verdict being incorporated into the final decree, we cannot doubt that a party considering himself aggrieved may except to that decree on the ground of error in the trial of the issue. If such error was committed, it attached to all the subsequent proceedings, and affected the final result. Upon this subject we are not embarrassed, as were the old courts of law and equity, when one tribunal ordered an issue, and another with different modes of procedure tried it. Now both law and equity (though kept separate) are administered by the same tribunal, with the right of appeal to the same appellate court.

This makes it necessary to consider whether the judge who tried the issue committed error of law, in excluding the certified copy of the deed from Breithaupt to Hamilton, on the ground that it had been placed on the books of registry without proper probate. A deed is good between the parties with or without registry, but in all cases it must be proved to have been signed, sealed, and delivered—that is necessary to its existence. The ordinary words of proof are familiar, and they are dispensed with only in one single case—that of "an ancient deed." If there are on the paper itself certain unmistakable indicia that it has been in existence over thirty years, there is a rule of evidence which declares that it proves itself. But this rule only applies when the original deed itself, the ancient paper, is produced. There is no such rule as to copies, no matter how old they may purport to be. Registry of a deed is a matter entirely different from its proof, the principal object being to affect third parties,

through notice, and as secondary thereto, to give certain advantages, such as that of authorizing certified copies to be offered in evidence in particular cases.

The whole system of registry is artificial, and rests on the terms of the statutes; but as a deed must be proved before it can exist for any purpose, all laws upon the subject require some kind of probate, proof of its execution, as an indispensable prerequisite to its going on the record. As to those laws, we think it settled, that the mere copying a paper in the books of registry does not give notice or any of the rights of registry, unless it has been first probated in the form and manner prescribed by law. "The recording of the deed therefore, not being authorized by the act of assembly, gave to it no additional validity, and the record thus made, or the exemplified copy therefrom, is no more evidence of the existence of the deed than would be a copy of such deed certified by a private individual," &c. *Budd* v. *Brooke*, 43 *Am. Dec.*, 333; see 1 *Whart. Evid.*, § 115; *Kerns* v. *Swope*, 2 *Watts*, 78; *Heister* v. *Fortner*, 2 *Binney*, 44. We do not consider that the case of *Lamar* v. *Raysor*, 7 *Rich.*, 509, is in conflict with this view. In that case the probate actually made did not appear (there was no requirement that it should). Under these circumstances the facts not appearing, the court felt at liberty to presume that all things were done which should have been done, and resting upon this presumption, there was a probate in compliance with the law.

The question then is, was the Breithaupt deed (1818), a copy of which was offered in evidence, admitted to registry without a compliance with the law as to probate? As before stated, the case is different from that of *Lamar* v. *Raysor* in this, that the certified copy here shows the actual probate upon which it was admitted to record, and there is, therefore, no room for presumption. The oath was made before one "R. Bush, J. P." It does not appear that the said Bush was an officer under the laws of this state, but it does appear that the affidavit was made in the State of Georgia, probably in the City of Augusta. Our registry law in force at that time (1820) was the act of 1788, which provided that "the acknowledgment of the deed by the grantor before a judge of the Supreme Court, or oath of one witness

before a magistrate out of court, swearing that the deed was duly and legally executed as hereinbefore has been the practice to make proof, shall be sufficient for that purpose," &c.   7 *Stat.*, 247.

This related to a deed executed within the state, for the act of 1788 had provided for the proof of a deed executed out of the state "that when any deed of land   *   *   *   within any county in this state shall be executed out of the state, then and in all such cases the justices of the county where such lands lie * * * are authorized to issue their *dedimus* to any two or more justices," &c.   7 *Stat.*, 244.   If the Breithaupt deed was executed in Georgia, there can be no question that the probate, being before one magistrate and not under a *dedimus* issued from this state, was void.   But the caption of the deed is "South Carolina, Edgefield District," and we will assume that it was signed and witnessed in this state.   Under these circumstances, could it be well proved out of the state by the affidavit of one of the subscribing witnesses before a magistrate of the State of Georgia? We think not.   The words of the act "before a judge of the Supreme Court or a magistrate out of court," manifestly meant officers of this state, commissioned by this state, and acting within this state.

But it is strongly urged that, even if the certified copy of a deed registered without legal probate is not admissible as evidence directly to prove title, yet being a question of competency of evidence, the rule is different when the paper is designed to serve a purpose merely collateral and subsidiary; and this copy, having been offered merely for such purpose, should have been admitted at least to the extent of showing as a matter of fact that such a paper was in existence.   We are not sure that, in its application to this case, we understand the distinction indicated. The plaintiffs claimed that, as heirs of one John Woolfolk, they were tenants in common with the defendant company in a certain tract of land in the possession of the latter.   The deed, of which the copy was offered, purported to be a conveyance from Breithaupt (once the joint owner with Woolfolk) of "an undivided moiety" of the land to one Hamilton.   We do not think there could be any serious question as to the identity of the lands, and

we do not see the purpose for which the copy was offered, unless it was to show by the terms of the paper that the original tenancy in common continued down to that time (1818), and tended to raise the presumption that the other "moiety" was still at that time the property of their ancestor, Woolfolk, and continued to be so down to the time of his death in 1861, a period of over forty years. Such evidence, however slight, it seems to us was directly upon the issue. But even if the copy deed had been admitted, we do not perceive how it could have helped the plaintiffs as against the defendant company ; for never having been legally recorded, it could not have been held that the registry afforded either express or implied notice of its contents so as to affect the company.

The judgment of this court is that the judgment of the Circuit Court be affirmed.